IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Sarah J. Zuchowski : | Case No.:  15-1130 |
| 19600 State Route 4 : | |
| Marysville, OH  43040 : | Judge: |
| : | |
| On Behalf of Herself and Others Similarly : | Magistrate: |
| Situated : | |
| : | |
| Plaintiff, : | CLASS ACTION COMPLAINT |
| : | |
| v. : | |
| : | |
| Harvest Credit Management VII, LLC : | |
| c/o National Registered Agents, Inc. : | |
| 1300 East Ninth Street : | |
| Cleveland, OH  44114 : | |
| : | |
| And : | |
| : | |
| Greene & Cooper, LLP : | |
| Attn:  Kyle A. Cooper : | |
| 3000 Vernon Place : | |
| Cincinnati, OH  45219 : | |
| : | |
| And : | |
| : | |
| Jeffrey R. Krismer : | |
| Greene & Cooper, LLP : | |
| 3000 Vernon Place : | |
| Cincinnati, OH  45231 : | |
| : | |
| Defendants. : | |

**CLASS ACTION COMPLAINT**

Now comes Sarah J. Zuchowski ("Plaintiff"), by and through counsel, individually and on behalf of all others similarly situated, and based on her own knowledge, information, and belief, formed after inquiry reasonable under the circumstances, states:

1

## JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the federal laws of the United States, more specifically the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p.

2. Venue is appropriate under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claim(s) occurred in this judicial district.

## NAMED PARTIES

3. Plaintiff is a naturally born person who currently resides in Marysville, Ohio.

4. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

5. Defendant Harvest Credit Management VII, LLC ("Harvest Credit") is a Foreign Limited Liability Company registered as active with the Ohio Secretary of State.

6. Harvest Credit is in the regular business of purchasing defaulted debts from creditors.

7. Harvest Credit regularly collects or attempts to collect, directly or indirectly, such debts owed or due or asserted to be owed or due another.

8. Harvest Credit is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

9. Defendant Greene & Cooper, LLP (Greene & Cooper) is a Limited Liability Partnership registered as active with the Ohio Secretary of State.

10. Green & Cooper uses instrumentality(ies) of interstate commerce or the mails in their business, the principal purpose of which is the collection of debts and/or regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

11. Green & Cooper is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

12. Defendant Jeffrey R. Krismer ("Krismer") is an attorney licensed to practice law in the State of Ohio.

13. Krismer uses instrumentality(ies) of interstate commerce or the mails in his business, the principal purpose of which is the collection of debts, and/or regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

14. Krismer is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

15. Harvest Credit, Greene & Cooper, and Krismer shall hereinafter be referred to collectively as "Defendants."

## NAMED PLAINTIFF'S FACTUAL ALLEGATIONS

16. Plaintiff restates all of the foregoing allegations in this Complaint as if fully restated herein.

17. At some point in time, upon information and belief in the early 2000's, Plaintiff applied for, and received a credit card from Household Card Services Inc. and/or Household Bank (Nevada), N.A. and/or Household Bank (SB), N.A. (collectively, "Household").

18. Household subsequently became, by merger/acquisition, HSBC Card Services (III) Inc. (HSBC).

19. Upon information and belief, no credit agreement was ever executed in writing between Plaintiff and Household/HSBC.

20. Rather, upon information and belief, after Household approved Plaintiff's credit card application, Household and/or HSBC sent one or more cardmember agreements to Plaintiff, outlining certain terms and conditions ("Credit Agreement").

21. Over a period of time, Plaintiff used the credit card to make purchases that were primarily for personal, family, or household purposes, thereby incurring debt ("Subject Debt").

22. In or around 2006, Plaintiff encountered financial difficulties, and ceased making monthly payments on the Subject Debt.

23. Plaintiff thereby became "in default" on the Subject Debt sometime in or around 2006.

24. On May 29, 2008, Harvest Credit purchased the Subject Debt, along with a bundle of other similar defaulted debts, from HSBC.

25. On June 19, 2014, Defendants filed a "Complaint" against Plaintiff in the Marysville Municipal Court, Union County, Ohio, delineated Case No. 14 CVF 443 ("Collection Lawsuit"), seeking the collection of certain amounts alleged to be owed by Plaintiff on the Subject Debt, more specifically, $4,620.53, plus accrued interest in the amount of $3,972.67, together with additional interest amounts.

26. A true and accurate copy of the Complaint and associated attachments is attached hereto as "Exhibit A."

27. The Subject Debt referenced in the Complaint was an obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money which was the subject of the transaction was primarily for personal, family, or household purposes.

28. The Subject Debt was therefore a "debt" as defined by 15 U.S.C. § 1692a(5).

29. The Collection Lawsuit was prepared and filed by Krismer and Greene & Cooper on behalf of Harvest Credit.

30. Pursuant to 15 U.S.C. § 1692a(6), Harvest Credit, Krismer, and Greene & Cooper were each a "debt collector" on the Subject Debt.

31. The Complaint conveyed information regarding a debt, directly and/or indirectly, to persons through a medium.

32. The Complaint was a "communication" as that term is defined by 15 U.S.C. § 1692a(2).

33. The Complaint alleged Plaintiff contracted with Harvest Credit's predecessor in interest for credit, goods and/or services.

34. Defendants did not attach a copy of any credit agreement, but instead attached an "Affidavit of Merit" signed by a Vice President of Harvest Credit.

35. The Complaint then alleged that Plaintiff "defaulted upon the terms and conditions of the agreement by failing to make payments as required by the terms of the [Affidavit of Merit]".

36. The Affidavit of Merit was not an agreement between Plaintiff and Harvest Credit, nor was it an agreement between Plaintiff and any of Harvest Credit's predecessor(s) in interest.

37. The Affidavit of Merit did not contain any payment "terms", nor did it confer upon Plaintiff any obligations, payment or otherwise, on the Subject Debt.

38. Further, the Affidavit of Merit contained statements that Plaintiff could not verify.

39. The Affidavit of Merit referenced a "credit agreement" between Plaintiff and the "credit grantor."

40. Though Defendants failed to attach any "credit agreement" referenced in the Affidavit of Merit, the terms and conditions concerning the Subject Debt were contained in the form of cardmember agreement(s) sent to Plaintiff after she was approved for credit.

41. Said cardmember agreement(s) were never signed by Plaintiff, and were never signed by HSBC/Household.

42. The Credit Agreement(s) were therefore each a "contract not in writing" for the purposes of O.R.C. § 2305.07.

43. Defendants also attached to the Complaint a "Bill of Sale" executed by a representative from HSBC Card Services (III) Inc.

44. The Bill of Sale indicated that the subject debt was transferred from HSBC to Harvest Credit on May 29, 2008.

45. Further, the Affidavit of Merit indicated that Harvest Credit purchased the subject debt after it was in default.

46. Therefore, the cause of action pertaining to the collection lawsuit accrued sometime before May 29, 2008.

47. In accordance with R.C. §§ 2305.03 and 2305.07, absent any choice of law provision contained in the cardholder agreement, Defendants were required to bring the Collection Lawsuit within six (6) years after the cause thereof accrued, in this case, when Plaintiff ceased making payments on the subject debt (defaulted).

48. Based on the documents Defendants attached to the Complaint, Defendants had clear knowledge that the debt was time barred before they filed the Collection Lawsuit, as the Bill of Sale indicated that the subject debt was transferred on May 29, 2008 and the Affidavit of Merit indicated the subject debt was in default sometime prior to that date.

49. Defendants disregarded the relevant statute of limitations under Ohio law by filing the Complaint on June 19, 2014, more than six (6) years after the cause of action (default) accrued.

50. Further, upon information and belief, the cardholder agreement(s) pertaining to the Subject Debt contained a choice of law provision.

51. Upon information and belief, said choice of law provision invoked the laws of a State other than Ohio ("Choice of Law State").

52. Sample HSBC cardholder agreements obtained from HSBC's website indicate that cardholders with an HSBC credit account are subject to the laws of the State of Virginia.

53. Upon information and belief, HSBC's cardholder agreement with Plaintiff contained a choice of law provision that invoked the laws of the State of Virginia.

54. In the alternative, upon information and belief based on HSBC's merger/acquisition with/of Household Bank Nevada, HSBC's cardholder agreement with Plaintiff contained a choice of law provision that invoked the laws of the State of Nevada.

55. In the alternative, upon information and belief, HSBC's cardholder agreement with Plaintiff contained a choice of law provision that invoked the laws of a State other than Virginia, Nevada, or Ohio.

56. In accordance with Code of Virginia § 8.01-246(4), Virginia's statute of limitations for contracts not in writing was three (3) years from the time of default.

57. In accordance with Nev. Rev. Stat. § 11.190(2)(c), Nevada's statute of limitations for contracts not in writing was four (4) years from the time of default.

58. Upon information and belief, the Choice of Law State, if not Virginia or Nevada, has a statute of limitations for contracts not in writing that is less than Ohio's six (6) years from the time of default.

59. In accordance with R.C. § 2305.03(B), no civil action that is based upon a cause of action that accrued in any other state, territory, district, or foreign jurisdiction may be commenced and maintained in Ohio if the period of limitation that applies to that action under the laws of that other state, territory, district, or foreign jurisdiction has expired.

60. Therefore, upon information and belief, the State laws invoked by the choice of law provision contained in the subject cardholder agreement proscribed a statute of limitations that was shorter than the six (6) years proscribed by R.C. §§ 3205.03 and 2305.07.

61. Upon information and belief, Harvest Credit had knowledge of the existence of a choice of law provision proscribing a shorter statute of limitations on the Subject Debt than the six (6) years proscribed under Ohio law for contracts not in writing.

62. Upon information and belief, Harvest Credit had knowledge that, under the choice of law provision in the subject cardholder agreement, the statutory period of limitation that applied to the subject debt had expired pursuant to the law of the Choice of Law State.

63. Upon information and belief, despite possessing the knowledge described above, Harvest Credit willfully caused the Collection Lawsuit to be filed against Plaintiff.

64. Upon information and belief, Harvest Credit did not attach to its Complaint a copy of the relevant cardholder agreement because, at least in part, it did not want to disclose the existence of a choice of law provision that would invoke a shorter statute of limitations than Ohio's six (6) years for contracts not in writing.

65. Plaintiff was forced to defend the Collection Lawsuit, and as a result, incurred actual damages and attorney's fees.

## NAMED PLAINTIFF'S CLAIMS FOR RELIEF

### Count I: Filing Collection Lawsuit Beyond Ohio's Six-Year Statute of Limitations

66. Plaintiff restates all of the foregoing allegations in this Complaint as if fully restated herein.

67. The Complaint filed by Defendants represented that Harvest Credit was legally entitled to seek and receive a court judgment against Plaintiff on the Subject Debt.

68. At the time Defendants filed the Complaint, the subject debt was time barred pursuant to R.C. §§ 2305.03(A) and 2305.07 since the cause of action on the subject debt had accrued more than six (6) years prior.

69. Defendants' were aware or should have been aware that the subject debt was time barred, since Defendants' own documents attached to their Complaint indicated that Harvest Credit acquired the debt on May 29, 2008, and also indicated that the debt was in default prior to that date.

70. Regardless, Defendants proceeded to file the Collection Lawsuit on June 19, 2014, more than six years after May 29, 2008.

71. Plaintiff's Answer filed in the Collections Lawsuit alerted Defendants that the action was time barred and should be dismissed.

72. Defendants failed to dismiss the Collection Lawsuit in a timely manner.

73. The Complaint filed by Defendants constituted a communication that falsely represented the character, amount, or legal status of a debt, in violation of 15 U.S.C. § 1692e(2)(A).

74. The Complaint also constituted the use of a false, deceptive, or misleading representation or means in connection with the collection of a debt, in violation, generally, of 15 U.S.C. § 1692e.

75. Pursuant to 15 U.S.C. § 1692k, Plaintiff is accordingly entitled to actual damages, such additional statutory damages as the Court may allow not exceeding $1,000, and the costs of this action, together with reasonable attorney's fees.

**Count II:  Filing Collection Lawsuit Beyond Choice of Law State's Statute of Limitations**

76. Plaintiff restates all of the foregoing allegations in this Complaint as if fully restated herein.

77. Upon information and belief, the cardholder agreement(s) on the Subject Debt contained choice of law provision(s) invoking the laws of a state other than Ohio.

78. Upon information and belief, the choice of law provision contained in the cardholder agreement(s) invoked the laws of a state that had a statute of limitations on contracts not in writing that was less than Ohio's six (6) year limitation.

79. At the time Defendants filed the Collection Lawsuit, the Subject Debt was time barred pursuant to R.C. §§ 2305.03(B) and 2305.07 since the period of limitation that applied under the laws of the Choice of Law State had expired.

80. Defendants' were aware or should have been aware that the subject debt was time barred under the laws of the Choice of Law State.

81. Regardless, Defendants filed the Complaint hoping to invoke Ohio's six (6) year statute of limitations instead of the shorter statute of limitation imposed pursuant to the Choice of Law State's relevant statute of limitations.

82. The Complaint filed by Defendants thereby constituted a false representation of the character, amount, or legal status of a debt, in violation of 15 U.S.C. § 1692e(2)(A).

83. The Complaint also constituted the use of a false, deceptive, or misleading representation or means in connection with the collection of a debt, in violation, generally, of 15 U.S.C. § 1692e.

84. Pursuant to 15 U.S.C. § 1692k, Plaintiff is accordingly entitled to actual damages, such additional statutory damages as the Court may allow not exceeding $1,000, and the costs of this action, together with reasonable attorneys fees.

## CLASS CLAIMS FOR RELIEF

### Class Count I:  Filing Collection Lawsuits Beyond Ohio's Six-Year Statute of Limitations

85. Plaintiff restates all of the foregoing allegations in this Complaint as if fully restated herein.

86. On May 29, 2008, Harvest Credit purchased and subsequently began collecting upon a pool of numerous defaulted credit card debts that are more particularly described by the "Exhibit A (Sale File)" referenced in the Bill of Sale attached to Defendants' Complaint in the Collections Lawsuit (said pool of debts hereinafter, "Pooled Debts").

87. Plaintiff does not currently possess a copy of the abovementioned "Exhibit A (Sale File)," as Defendants refused to comply with Plaintiff's discovery requests in the Collection Lawsuit.

88. Upon information and belief, Harvest Credit files numerous court actions in Ohio seeking judgment against Ohio consumers, similarly situated to Plaintiff, on the Pooled Debts.

89. Said Pooled Debts are predicated upon substantially similar cardholder agreements that are all contracts not in writing under Ohio law.

90. Upon information and belief, Harvest Credit regularly files such court actions despite the subject debts being time barred by Ohio's six (6) year statute of limitations under R.C. §§ 2305.03(A).

91. Upon further discovery, Plaintiff intends to define and move to certify a class of similarly situated consumers in Ohio who have been sued by Harvest Credit, on or after March 31, 2014, for judgment on defaulted credit card debts Harvest Credit acquired pursuant to the May 29, 2008 Bill of Sale ("Putative Class").

92. The complaints filed by Harvest Credit in the court actions described *supra* ¶88 each constitute a communication that falsely represents the character, amount, or legal status of a debt, in violation of 15 U.S.C. § 1692e(2)(A).

93. Said complaints also constitute the use of a false, deceptive, or misleading representation or means in connection with the collection of a debt, in violation, generally, of 15 U.S.C. § 1692e.

94. Upon information and belief, pursuant to 15 U.S.C. § 1692k, the Putative Class members are accordingly entitled to actual damages sustained as a result of Harvest Credit's failure to comply with the FDCPA, and such additional statutory amounts as the Court may allow, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of Harvest Credit, and the costs of this action, together with reasonable attorney's fees.

### Class Count II: Filing Collection Lawsuits Beyond Choice of Law State's Statute of Limitations

95. Plaintiff restates all of the foregoing allegations in this Complaint as if fully restated herein.

96. Upon information and belief, the cardholder agreements pertaining to the Pooled Debts each contain a choice of law provision that names a Choice of Law State.

97. Upon information and belief, said cardholder agreements are boilerplate in form and contain substantially similar, if not identical, choice of law provisions.

98. Said choice of law provisions name a Choice of Law State that has laws defining the cardholder agreements as contracts not in writing and invoking a statute of limitations on the Pooled Debts that is shorter than the six (6) years proscribed by Ohio law.

99. Upon information and belief, Harvest Credit knew that most if not all of the Pooled Debts were time barred under the laws of the Choice of Law State.

100. Upon information and belief, Harvest Credit wished to preserve its investment in said time barred debts, and therefore devised a scheme whereby it deliberately: (a) ignored the choice of law provisions contained in the subject cardholder agreements; (b) ignored R.C. §§

12

2305.03(B); (c) sought to invoke Ohio's six (6) year statute of limitations because it is longer than the statute of limitations proscribed by the laws of the Choice of Law State; (d) filed complaints in courts throughout Ohio that are substantially similar in form and content to the Complaint filed against Plaintiff; (e) attached to said complaints affidavits and bills of sale instead of cardholder agreements, at least in part in an effort to conceal the existence of relevant choice of law provisions; and (f) deliberately sought to gain court judgments on said time barred debts.

101. The complaints filed by Harvest Credit in the court actions described *supra* ¶100 each constitute a communication that falsely represents the character, amount, or legal status of a debt, in violation of 15 U.S.C. § 1692e(2)(A).

102. Said complaints also constitute the use of a false, deceptive, or misleading representation or means in connection with the collection of a debt, in violation, generally, of 15 U.S.C. § 1692e.

103. Upon information and belief, pursuant to 15 U.S.C. § 1692k, the Putative Class members are accordingly entitled to actual damages sustained as a result of Harvest Credit's failure to comply with the FDCPA, and such additional statutory amounts as the Court may allow, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of Harvest Credit, and the costs of this action, together with reasonable attorney's fees.

## Further Class Allegations

104. Plaintiff restates all of the foregoing allegations in this Complaint as if fully restated herein.

105. Upon information and belief, this action is properly maintainable as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

106. Upon information and belief, members of the Putative Class will be so numerous that joinder is impractical.

107. Plaintiff will assure the adequate representation of all members of the Putative Class and will have no conflicts with any Putative Class members in the maintenance of this action.

108. Plaintiff's interests in this action will be typical of the Putative Class, and the complaints filed against the Putative Class members are substantially similar in form and content to the Complaint Harvest Credit filed against Plaintiff.

109. Plaintiff's interests in this action are antagonistic to the interests of Harvest Crest.

110. Plaintiff has no interest in or relationship with Harvest Credit that would prevent her from litigating this matter fully and on behalf of the Putative Class.

111. Plaintiff is aware that settlement of this class action is subject to court approval.

112. Plaintiff will vigorously pursue the class claims throughout the course of this action.

113. A class action will provide a fair and efficient means to adjudicate this controversy since the claims of the Putative Class members are virtually identical, raising the same questions of fact and law.

114. Most if not all facts needed to determine Putative Class damages are readily obtainable from the records of Harvest Credit.

115. The purposes of the FDCPA will be best effectuated by a class action.

116. A class action will be superior to other methods for the fair and efficient adjudication of this controversy.

117. Because the damages suffered by most if not all members of the Putative Class will be relatively small in relation to the costs, expense, and burden of individual litigation, it will

be difficult for members of the Putative Class to individually redress the wrongs done to them.

118. Many, if not all of the Putative Class members are unaware that claims exist against Harvest Credit.

119. Because many if not most Putative Class members are unaware of their claims and because their claims are small in relation to the cost of an individual suit, a class action is the only proceeding in which class members can, as a practical matter, recover.

120. There will be no unusual difficulty in the management of this action as a class action, as the information necessary to determine the viability Plaintiff's class allegations is readily obtainable from Harvest Credit and public records.

121. Further, all Putative Class members are readily ascertainable from Harvest Credit's own records.

122. Common questions of law predominate over all matters in this action, as the allegations all concern violation(s) of a singular federal act (the FDCPA).

**WHEREFORE**, Plaintiff prays for the following relief:

A. A determination that Defendants each violated the FDCPA by filing the Collections Lawsuit against Plaintiff at a time when such action was time barred by Ohio's applicable statute of limitations;

B. A determination that Defendants each violated the FDCPA by filing the Collections Lawsuit against Plaintiff at a time when such action was time barred by the Choice of Law State's applicable statute of limitations;

C. Once Plaintiff has completed discovery and moved for class certification, Certification of the Putative Class under Rule 23 of the Federal Rules of Civil Procedure with the named Plaintiff as class representative;

D. A judgment entitling Plaintiff, and all putative plaintiff class members, upon the claims for relief mentioned in this Complaint, an award in excess of $25,000 pursuant to the remedies set forth in 15 U.S.C. § 1692(k);

E. An award to Plaintiff, and all putative plaintiff class members, of all other remedies that equitably and reasonably flow from Harvest Credit's breach(es) of federal and/or state law and the obligations that arise therefrom;

F. An award to Plaintiff, and all putative plaintiff class members, their reasonable attorneys fees, costs, disbursements and pre-judgment interest; and

G. An award of such other and further relief that the Court deems just, equitable, and proper.

### JURY DEMAND

Plaintiff hereby demands a jury for all issues triable.

Dated this 31st day of March, 2015.

Respectfully submitted,

 /s/  Michael B. Zieg
Michael B. Zieg (0066386)
Eric E. Willison (0066795)
James E. Nobile (0059705)
**Nobile & Thompson Co., LPA**
4876 Cemetery Road
Hilliard, Ohio 43026
Phone:  614.529.8600
Fax:  614.629.8656
mzieg@ntlegal.com
eewillison@earthlink.net
jenobile@ntlegal.com
*Counsel  for Plaintiff and Putative Class*

16